The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. The employment relationship existed between plaintiff-employee and defendant-employer.
3. Liberty Mutual Insurance Company was the carrier on the risk.
4. Plaintiffs average weekly wage was $541.60, yielding a compensation rate of $361.08.
5. All documents and exhibits stipulated through the Pre-trial Agreement and the Stipulation of the parties dated October 13, 1998, have been received as evidence.
6. The issues before the Commission are:
 a. Whether plaintiff is entitled to compensation for temporary total disability from June 13 through August 5, 1996. If so, what compensation is due plaintiff, or, if not, what credit is due defendants.
 b. Whether plaintiff is entitled to compensation for temporary total disability from September 22, 1996 through February 4, 1997. If so, what compensation is due plaintiff, or, if not, what credit is due defendants.
 c. The compensation, if any, to which plaintiff is entitled under N.C. Gen. Stat. 97-31.
 d. Whether defendants are obligated to pay for plaintiffs treatment by Guilford Therapy Center.
 e. Whether defendants are obligated to pay the fees incurred by plaintiff for Dr. Peter Dalldorf.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was thirty-seven years of age on the date of the hearing before the deputy commissioner. She began working for defendants United Parcel Service in September 1985.
2. Plaintiff sustained an admittedly compensable injury by accident, a back strain, on November 13, 1995. This back strain was the subject of a Form 21 Agreement approved by the Commission on February 5, 1996.
3. On November 14, 1995, plaintiff was evaluated by Dr. Thomas Presson at Greensboro Orthopedic Center. Dr. Presson determined that plaintiff had an acute back strain and sent her to physical therapy.
4. Dr. Presson continued plaintiff in therapy and kept plaintiff out of work. At her February 26, 1996 visit, Dr. Presson ordered a functional capacity evaluation. Following the results of that FCE, when he saw plaintiff on March 4, 1996, Dr. Presson released her to return to light to medium duty work.
5. On February 14, 1996, plaintiff was examined by Dr. David Ward, an orthopedic surgeon. He assessed her with a lumbar strain and found no objective reason to restrict her activities.
6. Following the evaluation by Dr. Ward and her release by Dr. Presson, plaintiff on her own sought treatment from Dr. Lauren Spillman. On her next visit to Dr. Presson on April 12, 1996, plaintiff requested that Dr. Presson refer her to Dr. Spillman, and told him that Dr. Spillman had an explanation for her complaints of ongoing pain. Dr. Presson then made the referral.
7. Plaintiff first saw Dr. Lauren Spillman, a specialist in occupational medicine on April 3, 1996, prior to Dr. Pressons referral. Dr. Spillman placed the following restrictions on plaintiffs work activities: (1) no lifting over 35 pounds, (2) no repetitive bending, stooping, or twisting of the back. In a letter of June 11, 1996, Dr. Lauren Spillman approved plaintiff for a return to work as a PCES clerk and destination scanner.
8. On June 13, 1996, plaintiff returned to work in the temporary alternative work program as a PCES clerk. This position involved clerical duties such as checking and correcting address labels. There was some pushing and lifting of packages, but nothing in excess of plaintiffs restrictions.
9. On June 14, 1996, while working this light duty, plaintiff sustained acute pain related to the compensable November 13, 1995 back strain and attempted to get treatment from the Greensboro Orthopedic Center. Because she had been discharged from Dr. Pressons care, however, a doctor from that group would not treat her at that time.
10. Plaintiff then went to the emergency room at Moses Cone Memorial Hospital in Greensboro. The emergency room physician, Dr. James, suggested Dr. Pressons group, or Dr. Peter Dalldorf in the alternative.
11. Plaintiff proceeded to see Dr. Dalldorf on June 17, 1996. Dr. Dalldorf assessed her with SI joint irritation. He sent her to Southeastern Radiology for anti-inflammatory medicine injections and later to Guilford Therapy Center for physical therapy.
12. On August 6, 1996, by mutual agreement of the parties, plaintiff was seen by Dr. Scott Spillman, a specialist in occupational medicine. Dr. Spillman found that plaintiff had a lumbosacral strain with SI dysfunction. Based upon his examination, Dr. Spillman placed the following restrictions on plaintiffs work activities: (1) no lifting, pulling, pushing, carrying over 20 pounds; (2) have a good body posture while working; (3) change positions as needed for comfort, such as sitting, standing, walking; (4) no bending, stooping, twisting of the back; (5) no mopping, sweeping, shoveling, scrubbing; (6) no work at unprotected heights; (7) no climbing ladders; (8) no driving company vehicles; (9) may work in jobs that accommodate the above restrictions.
13. Based upon these new restrictions from Dr. Spillman, defendant-employer could not accommodate plaintiff. The carrier then reinstated plaintiffs ongoing total disability benefits.
14. Although Dr. Dalldorf was the physician who initially had sent plaintiff to physical therapy at Guilford Therapy Center, Dr. Spillman approved continuing with that program. Dr. Spillman recommended continued physical therapy through September 20, 1996. He then planned to send plaintiff to a work hardening program. Dr. Spillman referred plaintiff for a functional capacity evaluation that included a test with a B200 machine and inclinometry designed to evaluate her back.
15. In an Administrative Order filed by then Special Deputy Commissioner Amy Pfeiffer on May 16, 1996, plaintiff was ordered to comply fully with all medical and rehabilitative treatment as provided by defendants.
16. Based upon plaintiffs alleged refusal to comply with the B200 test, defendants filed a Form 24 to stop ongoing payment of benefits. Defendants had resumed payment of total disability benefits as of August 6, 1996 and continued paying these benefits through January 13, 1997. An informal telephone hearing was conducted on December 18, 1996. By Administrative Order of Yvonne Bullock, Special Deputy Commissioner, filed January 8, 1997, defendants were allowed to cease payment of benefits effective September 22, 1996 and continuing so long as plaintiff refused to participate in the test.
17. Plaintiff did not refuse to take the B200 test. She tried the test initially on September 12, 1996 but was unable to continue due to the pressure the machine put on her back and the resulting pain. Plaintiff attempted the test a second time on October 15, 1996. She was willing to take the test but refused to sign the consent form that stated the possibility of reinjury as a result of the test. Because plaintiff experienced pain during her first attempt, she was apprehensive and did not sign the consent.
18. At her October 31, 1996 visit, Dr. Spillman placed temporary restrictions on plaintiff of no lifting, pushing, or carrying greater than 35 pounds. He continued her in the work hardening program.
19. On her February 4, 1997 appointment, Dr. Spillman released plaintiff to return to full duty and discontinued the work hardening program.
20. By her March 3, 1997 visit, Dr. Spillman stated that plaintiff had reached maximum medical improvement and had no permanent impairment to her back. Dr. Spillman released her from his care.
21. Dr. Dalldorf evaluated plaintiff in February 1998 and assigned plaintiff a 1% permanent partial impairment to her back as a result of the November 13, 1995 injury.
 ***********
Based upon the findings of fact, The Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident, a back strain, on November 13, 1995. This back strain was the subject of a Form 21 Agreement approved by the Commission on February 5, 1996. N.C. Gen. Stat. 97-2 (6). The Form 21 agreement entitles plaintiff to a presumption of disability that continues until rebutted by defendants. Franklin v. BroyhillFurniture Industries, 123 N.C. App. 200, 472 S.E.2d 382, cert.denied, 344 N.C. 629, 477 S.E.2d 39 (1996).
2. On June 14, 1996, plaintiff sustained acute, disabling pain directly related to the compensable November 13, 1995 back strain. N.C. Gen. Stat. 97-2 (6).
3. As a result of the June 14, 1996 compensable aggravation of the November 13, 1995 injury by accident, plaintiff was disabled and is entitled to total disability compensation at the rate of $361.08 per week from July 2 through August 5, 1996, and from September 22, 1996 through February 4, 1997, when plaintiff was released to return to work without restrictions. N.C. Gen. Stat.97-29, Harrington v. Adams-Robinson Enterprises, 349 N.C. 218,504 S.E.2d 786 (1998) (per curium).
4. As a result of the November 13, 1995 injury by accident, plaintiff has a 1% permanent partial disability disability to her back, for which plaintiff is entitled to compensation at the rate of $361.08 per week for a period of 3 weeks. N.C. Gen. Stat. 97-31
(23).
5. Plaintiff is entitled to the payment by defendants of all medical expenses incurred as a result of her compensable injury. This includes the expenses of plaintiffs visit to the Moses Cone Memorial Hospital emergency room, the treatment of Dr. Dalldorf, and the physical therapy at Guilford Therapy Center. N.C. Gen. Stat. 97-25.
6. Defendants are entitled to a credit for any total disability payments made during the periods from July 2 through August 5, 1996, and from September 22, 1996 through February 4, 1997.
7. In that there was no refusal to comply with vocational rehabilitation or medical treatment in this case, the January 8, 1997 order approving the Form 24 filed in this case was improvidently granted.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorneys fee in Paragraph 4 and to the credit owed defendants, defendants shall pay to plaintiff total disability compensation from July 2 through August 5, 1996, and from September 22, 1996 through February 4, 1997 at the rate of $361.08 per week. Because this amount has accrued, it shall be paid to plaintiff in a lump sum.
2. Subject to the attorneys fee in Paragraph 4 and to the credit owed defendants, for her 1% permanent partial disability of her back, defendants shall pay to plaintiff permanent partial disability at the rate of $361.08 per week for a period of 3 weeks. This amount shall be paid in a lump sum.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of the compensable injury so long as such examinations, evaluations and treatments were reasonably required to affect a cure, give relief, or tended to lessen the employees period of disability.
4. An attorneys fee of 25% of the compensation awarded in Paragraphs 1 and 2 is approved for plaintiffs counsel and shall be paid as follows: Twenty-five percent of the accrued compensation shall be paid directly to plaintiffs counsel.
5. Defendants shall pay the costs due to the Commission.
6. The January 8, 1997 order approving the Form 24 filed in this case is HEREBY VACATED.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER